# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 16-CR-20257-MIDDLEBROOKS

UNITED STATES OF AMERICA,

v.

WILLIE WILCHER,

    Defendant.                  /

## **ORDER ON MOTIONS TO CLARIFY/CORRECT TRANSCRIPT**

THIS CAUSE comes before the Court on the Government's Motion to Clarify Transcript, filed July 11, 2017 (DE 63, "Motion"). After I held an evidentiary hearing on the Government's Motion, Defendant filed a Cross-Motion for Correction of the Record Pursuant to Fed. R. App. P. 10(e). (DE 80, "Cross-Motion"). For reasons stated below, the official transcript must be corrected.

## BACKGROUND

Defendant was charged with one count of possession of ammunition by a convicted felon. (DE 1). He proceeded to a jury trial, which began on August 8, 2016. After the close of the evidence and closing arguments, the jury began deliberations on August 9, 2016 around 3:00 p.m. and deliberated until 5:00 p.m. The jury returned the following morning and reached a verdict around 3:35 p.m. on August 10, 2016. After everyone had gathered in the courtroom, the foreperson indicated the jury had reached a verdict and that the verdict was unanimous. I directed the courtroom deputy to read the verdict and to poll the jury thereafter, which is my usual practice.[1] After the courtroom deputy read

---

[1] Rule 31(d) provides that "[a]fter a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually." Fed. R. Crim. P. 31(d). "[T]he form of jury polling is a matter entrusted to the sound discretion of the trial judge." *United States v. O'Bryant*, 775 F.2d 1528, 1535 (11th Cir. 1985). The purpose of polling is "to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and parties 'to ascertain for a certainty

the verdict (filed at DE 30), she then polled the jurors. The jury was dismissed and I scheduled Defendant's sentencing for October 11, 2016 (DE 31).

On August 24, 2016, Defendant filed a Motion for New Trial. (DE 34). On August 26, 2016, I denied his Motion for New Trial. (DE 35).

On October 11, 2016, I sentenced Defendant to 360 months' imprisonment, followed by a term of supervised release of five years. (DE 44, 45). Defendant filed a Notice of Appeal on October 24, 2016 (DE 46), followed by an Amended Notice of Appeal filed the same day (DE 48). The trial transcript was filed on December 27, 2016 (DE 58) and December 30, 2016 (DE 59, 60). On February 3, 2017, the Clerk of the District Court for the Southern District of Florida certified that the record is complete for the purpose of appeal. (DE 62).

On July 11, 2017, the Government filed a Motion to Clarify the Accuracy of the Trial Record Pursuant to Federal Rule of Appellate Procedure 10(e). (DE 63). The Government explained that the official transcript provided that one of the jurors answered "no" when asked by the courtroom deputy, "Is this your verdict?" The Government also explained that it had filed in the appellate court an unopposed motion to stay the appeal pending Rule 10(e) proceedings in the district court.

Defendant, through counsel, filed a response to the Motion on July 13, 2017. (DE 64). In his response, Defendant agreed that the district court should determine whether the trial transcript

---

that each of the jurors approves of the verdict as returned.'" *United States v. Edwards*, 469 F.2d 1362, 1366 (5th Cir. 1972) (quoting *Humphries v. District of Columbia*, 174 U.S. 190, 194 (1899)). *See also United States v. Shepard*, 576 F.2d 719, 725 (7th Cir. 1978) (explaining the purpose of polling is "not to invite each juror to reconsider his decision, but to permit an inquiry as to whether the verdict is in truth unanimous and uncoerced, and that each juror has fully assented.") (internal citations and quotation marks omitted). I poll as a matter of course to avoid any issue should counsel fail to timely request a poll. *See United States v. Marinari*, 32 F.3d 1209, 1214 at n.2 (7th Cir. 1994) (recommending that district courts automatically poll jury to prevent problems should counsel request poll after jury leaves courtroom following recording of verdict).

2

accurately reflects that Juror No. 7 answered "no." (*Id.* at 1). Defendant also requested an evidentiary hearing. (*Id.* at 2). Should the Court find that "the transcript accurately records Juror No. 7's 'no' answer," Defendant "will ask this Court to order a mistrial, in accordance with Fed. R. Crim. P. 31(d), which provides that if a jury poll reveals a lack of unanimity, the district court should either direct the jury to deliberate further (an option which is no longer available), or declare a mistrial." (*Id.* at 2-3).

On July 18, 2017, I held a telephonic status conference on the Motion, and informed the Parties that I had listened to the court reporter's audio recording of the jury poll.[2] (DE 82, Status Conf. Trans.). I informed them that, based on my perception of the audio recording, Juror 7 answered "yes" but that Juror 6's answer was unintelligible or unclear. I asked the Parties for their positions on how to proceed and both believed an evidentiary hearing was appropriate. The Parties also believed that Jurors 6 and 7 should be subpoenaed to testify. During the conference, the Parties informed me that the Eleventh Circuit had granted the motion to stay "pending resolution of FRAP 10(e) motion in the district court to correct the record." *See* No. 16-16751-AA (11th Cir. July 17, 2017). At the conclusion of the status conference, I scheduled an evidentiary hearing for August 15, 2017 (DE 66), which was later rescheduled for August 18, 2017 (DE 69). I issued a writ of habeas corpus ad prosequendum for Defendant's appearance at the evidentiary hearing. (DE 67).

On August 18, 2017, I held an evidentiary hearing. I questioned Juror 6 and Juror 7 in the jury box. The Government called Genevieve McGee, my courtroom deputy who polled the jury during Defendant's trial. Defendant called three witnesses: Robin Dispenzieri, the court reporter during Defendant's trial; Assistant United States Attorney Miesha Darrough, one of the Government's trial

---

[2] Prior to the status conference, I asked the court reporter to send a copy of the audio recording from the jury poll to chambers, which she did via email. I listened to the audio recording through a computer program (Express Scribe).

3

counsel; and Assistant Federal Public Defender Adebunmi Lomax, one of Defendant's trial counsel.

After the evidentiary hearing, Defendant filed a Cross-Motion for Correction of the Record Pursuant to Fed. R. App. P. 10(e). (DE 80). In the Cross-Motion, Defendant seeks to correct the transcript in three places: (1) to change Juror 6's answer from "yes" to "no" in response to the jury poll; (2) to change Juror 7's answer from "no" to "yes" in response to the jury poll; (3) and to add the Court's instruction to Juror 12, "Ma'am you need to answer out loud."

## STANDARD

Federal Rule of Appellate Procedure 10(e) provides:

(1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

    (A) on stipulation of the parties;

    (B) by the district court before or after the record has been forwarded; or

    (C) by the court of appeals.

(3) All other questions as to the form and content of the record must be presented to the court of appeals.

Fed. R. App. P. 10(e). A certified court transcript is "deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753(b). However, a certified transcript is subject to correction. *See United States v. Smith*, 433 F.2d 149, 151 (5th Cir. 1970).[3]

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as precedent all rulings of the former Fifth Circuit issued prior to October 1, 1981.

4

## DISCUSSION

Before turning to the evidentiary hearing, I address two issues raised by Defendant's counsel: (1) whether the jurors should be permitted to testify and (2) whether I may rely on my own recollection of the jury poll.

**Juror Testimony.** During the telephonic status conference on the Government's Motion to Clarify, Defendant's appellate counsel, Mr. Cone, expressed his interest in having Juror 6 and Juror 7 testify at the evidentiary hearing he had requested. *See* (Status Conf. Trans.). After the status conference, Defendant filed a Motion to Quash (DE 70), seeking to quash the jurors' subpoenas. Defendant argued that no juror should be "recalled" to testify because juror testimony would intrude upon jury deliberations and that, based on the passage of time, jurors may have been exposed to extrinsic information which could "shape [their] testimony at an evidentiary hearing." (DE 70 at 6). I denied the Motion to Quash, specifically noting that "[t]he scope of examination of the jurors will be limited to the issue of jury polling and will preclude any inquiry into jury deliberations." (DE 71).

At the evidentiary hearing, Mr. Cone objected to any juror testimony. I reminded Mr. Cone that his position was contrary to his position at the telephonic status conference, during which Mr. Cone repeatedly expressed his desire to hear from Jurors 6 and 7:

> Mr. Cone: Well, it sounds like we should be asking juror number six. (Status Conf. Trans. at 10:21-22).

> Mr. Cone: And so I do think the Government, if it wants to change a "no" to a "yes," needs to call witnesses to establish that "no" means "yes." The two being opposite things of course. So I think the Government should call juror number six, if they want to establish that "no" means "yes," in other words. (*Id.* at 11:17-22).

> Mr. Cone: Well, then maybe I need to call number six, the defendant needs to call number six, which, you know, that's fine. . . . if the Government doesn't want to call juror number six, I'll subpoena juror number six. (*Id.* at 12:2-6).

5

Indeed, when scheduling the evidentiary hearing at the end of the status conference, Mr. Cone "wonder[ed] whether the jurors also might have conflicts . . . but that's obviously a high priority matter as well, those witnesses, and the court reporter." (*Id.* at 18:4-8).

Inquiry into a jury deliberations is constrained. As explained recently by the Supreme Court:

> A general rule has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations. This principle, itself centuries old, is often referred to as the no-impeachment rule.

*Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 861 (2017). Congress codified a "stringent version" of the no-impeachment rule in Rule 606(b) of the Federal Rules of Evidence. *Id.* at 864. Rule 606(b) provides:

> (1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
> (2) Exceptions. A juror may testify about whether:
>     (A) extraneous prejudicial information was improperly brought to the jury's attention;
>     (B) an outside influence was improperly brought to bear on any juror; or
>     (C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).[4]

Although juror testimony is limited by Rule 606(b), I find that jurors may testify about the answer they provided during the jury poll. In other words, a juror may restate his or her answer provided to the jury poll, if the juror remembers, without intruding into why the juror provided that

---

[4] Many cases discuss Rule 606(b) in the context of juror misconduct or bias that affected jury deliberations. *See, e.g., Wargner v. Shauers*, 135 S. Ct. 521 (2014); *Tanner v. United States*, 483 U.S. 107 (1987). Defendant has not cited, and the Court is unaware of, any cases discussing the no-impeachment rule in connection with a transcript issue.

6

answer or intruding into jury deliberations. Accordingly, the no-impeachment rule, as codified in Rule 606(b), is not applicable to Juror 6 and Juror 7's testimony at the evidentiary hearing.

Even assuming that asking a juror to testify as to how she responded during the jury poll falls under Rule 606(b), I find that Rule 606(b) does not prohibit Juror 6 and Juror 7's testimony. One exception to Rule 606(b) is that a juror may testify about whether "a mistake was made in entering the verdict on the verdict form." Rule 606(b)(2)(C). The sole purpose of asking a juror to repeat a previously provided answer to a jury poll is to determine whether her verdict was recorded correctly by the court reporter. The purpose and limitations of such testimony is strikingly similar to the exception provided in Rule 606(b)(2)(C), and thus is permissible.

Based on the limitations on juror testimony, and Mr. Cone's insistence that "Wilcher should be given the widest latitude in cross-examining [the jurors]" if permitted to testify (DE 70 at 13), I informed the Parties at the beginning of the evidentiary hearing that I would question the jurors to the extent necessary to resolve the transcript issue and would not permit the attorneys to question them.

**Reliance on Court's Recollection.** In his Motion in Limine, Defendant argued that I may not rely on my own recollection of what happened during the jury poll to correct the transcript. (DE 73 at 3). As an initial matter, Federal Rule of Appellate Procedure 10(e) specifically requires the district judge to correct any transcript errors. Fed. R. App. P. 10(e)(1) ("If any difference arises about whether the record truly discloses what occurred in the *district court*, the difference must be submitted to and *settled by that court* and the record conformed accordingly.") (emphasis added).

Other judges have relied, in part, on their recollection in correcting the record. For example, in *United States v. Cashwell*, 950 F.2d 699 (11th Cir. 1992), the Eleventh Circuit affirmed a conviction and judgment where the jury voir dire proceedings were not recorded by a court reporter,

7

but were later reconstructed pursuant to Rule 10(e). The trial judge relied on his own recollection, along with the recollections of the court reporter, trial lawyers, courtroom deputy, and the defendant, as well as certain documents relevant to voir dire. 950 F.2d at 702. Additionally, appellate courts have explained that the district judge's own recollection in correcting a transcript is conclusive absent intentional falsity or unless plainly unreasonable. *See United States v. Hernandez*, 227 F.3d 686, 695 (6th Cir. 2000) ("When a district court settles a dispute about what occurred in proceedings before it, the court's determination is conclusive unless intentionally false or plainly unreasonable, . . . because [u]ltimately the [District] Court has direct knowledge of what the parties [stated in the] case and of what the Court's own general procedures are.") (internal citations and quotation marks omitted); *United States v. Mori*, 444 F.2d 240 (5th Cir. 1971) ("The trial judge ordered the record corrected pursuant to his recollection of the events at issue, and that determination, absent a showing of intentional falsification or plain unreasonableness, is conclusive.").

As the trial judge who presided over Defendant's case, including accepting the return of the verdict and the jury poll, my recollection of the jury poll is relevant. For these reasons, I explain my recollection of the jury poll in this Order.

**Evidentiary Hearing.** After the verdict was read by the courtroom deputy, she asked each juror, by number, "Is this your verdict?" Months after the trial, Court Reporter Robin M. Dispenzieri[5] filed the certified transcript in the record. The following portion of the transcript is for the return of the verdict and the jury poll:

**The Court:** Welcome back, ladies and gentlemen. Please be seated.

Who speaks for the jury as its foreperson?

---

[5] Ms. Dispenzieri is not the court reporter that is normally assigned to me.

Has the jury reached a verdict?

**The Foreperson:** Yes, sir.

**The Court:** Is your verdict unanimous?

**The Foreperson:** Yes, sir.

**The Court:** Please hand it to Ms. McGee.

In a moment, Ms. McGee will read the verdict aloud in open court. Please listen carefully. When she finishes she will ask each of you in turn by jury number, is this your verdict. You need to answer yes or no.

**Courtroom Deputy:** Case number 16-20257-CR-Middlebrooks. United States of America versus Willie Wilcher.

Verdict form, we, the jury, unanimously find the defendant, Willie Wilcher, as to the indictment guilty. So say we all, signed by the foreperson dated August 10, 2016.

Juror number 1, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 2, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 3, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 4, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 5, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 6, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 7, is this your verdict?

**Juror:** No.

**Courtroom Deputy:** Juror number 8, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 9, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 10, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 11, is this your verdict?

**Juror:** Yes.

**Courtroom Deputy:** Juror number 12, is this your verdict?

**Juror:** Yes.

(DE 60 at 20:4-21:19). After the jury was polled, no one objected to the verdict or made any motion. After the jury poll, I thanked the jury for its service and dismissed the jurors. When the jury had exited the courtroom, I scheduled Defendant's sentencing. I also asked, "Is there anything either side has at this point?" (DE 60 at 22:12). Defendant's attorney, Adebunmi Lomax, replied no. (*Id.* at 22:13). AUSA Miesha Darrough also replied no. (*Id.* at 22:14).

The Government supoenaed Juror 6 and Juror 7 to testify at the evidentiary hearing. Both jurors waited outside of the courtroom until it was his or her turn to testify. I asked each juror to sit

10

in the jury box. The jurors were sworn, as they had previously been dismissed as jurors at the conclusion of Defendant's trial. My examination of the Jurors was limited to the issue of polling.

Juror 7 confirmed that he served on the jury and that he was the foreperson, but he did not remember his juror number. Court records, including the signed verdict form, confirms that Juror 7 was the foreperson.[6] (DE 30-1). He remembered answering "yes" when I asked him if the jury had reached a verdict in Defendant's trial and when I asked him if the verdict was unanimous. Juror 7 also remembered answering "yes" when he was polled after the verdict was read. He testified that he did not hear any other juror respond "no" when asked, "Is this your verdict?"

Juror 6 confirmed that she served on the jury but she did not remember her juror number. She testified that she remembered answering "yes" when asked, "Is this your verdict?"

The Government called Ms. McGee, my courtroom deputy who polled the jury during Defendant's trial, as a witness. After being sworn in, Ms. McGee testified that she remembered that the verdict in Defendant's trial was guilty and that she polled the jury. She testified that she heard an audible response from all jurors when polled and that all jurors answered "yes." On cross examination, she testified that she has no independent recollection of the juror numbers.

Defendant called Ms. Dispenzieri as a witness. She testified that she has been a court reporter for 24 years and that she has only been aware of four occasions where there has been an error in her transcript. She testified that, if she cannot hear what someone says in the courtroom, she will either, depending on which judge is presiding, ask the person to repeat it or raise her hand. She said she

---

[6] As sealed appendices to this Order, I have attached the list of the jury panel provided to the courtroom deputy by the jury section prior to jury selection, which contains Ms. McGee's handwritten notations (Appendix A). I have also attached the list of jurors selected for the jury (Appendix B). Both identify jurors by name and juror number. These lists were maintained in chambers' file of Defendant's trial.

11

would never guess an answer. During the jury poll of Defendant's trial, she testified that she did not ask any juror to repeat an answer.

Defendant introduced three exhibits through Ms. Dispenzieri: (1) the transcript of Day Three of Defendant's trial, which includes the jury poll and is the certified transcript she filed on the docket at DE 60; (2) Ms. Dispenzieri's steno notes from the jury poll; and (3) an audio recording of the return of verdict to the end of trial. According to her steno notes, Ms. Dispenzieri heard a "no" response from Juror 6. She explained that she typed a "tph o" after Juror 6 in her steno notes, which translates to "no." (DE 81-1 at 4). She then typed "noat" multiple times, which she stated is a note to herself indicating that the "no" was not an error. She testified that she did not type any answers for Jurors 7 or 8 in her steno notes.

She could not explain why the transcript had a "no" after Juror 7. She testified that her machine recorded the audio and that the audio was saved within her laptop computer. She then sent the audio and her steno notes to her scopist, who actually transcribed the trial proceedings. When she received the transcript from her scopist, she had an opportunity to review it. She admitted there are errors in the certified transcript filed on the docket in this case, but that she was not aware of any errors until the attorneys in this case contacted her. Ms. Dispenzieri said her scopist did not include an exchange I had with Juror 12, wherein I instructed Juror 12 to state her answer to the jury poll out loud. She also agrees that the transcript is incorrect when it states that Juror 7 said "no." She testified that, when she listens to the audio recording, she hears Juror 6 say "no."

Defendant called AUSA Darrough, who was one of the Government's lawyers at trial and was present for the jury poll. Ms. Darrough testified that the verdict was published and that she heard each juror respond "yes" to the jury poll. She explained that the Government had no interaction with the

jurors after the trial, except in connection with subpoenaing Jurors 6 and 7 for the evidentiary hearing. She spoke to both Juror 6 and 7 prior to the hearing by phone. She asked them if they remembered the answers they provided to the jury poll, which they did, and both jurors remembered responding "yes."

Defendant also called his trial counsel, AFPD Lomax, to testify. Ms. Lomax stated that she listened to the audio recording the morning of the evidentiary hearing and that she heard a "no" response from Juror 6 on the audio. She testified that she did not hear a "no" response when she was in the courtroom during the jury poll. She only specifically remembers hearing the answers provided by the foreperson and the female juror who was crying. She remembers both of those jurors said "yes" when polled. She testified that she "dropped the ball" by not listening to all jurors' responses and was talking to Defendant during the poll. She also testified that her head was down as she had lost an important trial. She described it as an emotional and professional challenge. She claimed that she made a mistake but then conceded that she did not hear a "no" response at the time.

**Determination of the Accuracy of Transcript.** Juror 7's testimony that he responded "yes" is consistent with the audio recording of the proceedings, which reflects that Juror 7 responded "yes" to the courtroom deputy's questioning. All witnesses, including Ms. Dispenzieri and Ms. Lomax, agreed that Juror 7 responded "yes." The transcript should be corrected to reflect that Juror 7 responded "yes" when polled.

Additionally, the audio indicates that, after Juror 12 did not provide an audible response to the courtroom deputy's questioning during the poll, I instructed her to answer out loud. My instruction is omitted from the transcript, and Ms. Dispenzieri agrees that it was omitted. The transcript must be corrected to reflect my exchange with Juror 12 during the poll.

The transcript provides that Juror 6 answered "yes" to the poll. For the reasons stated below, the transcript correctly reflects Juror 6's answer.

Juror 7 was the foreperson and his testimony that he did not hear a "no" response to the poll was credible. The audio, as well as his testimony, reflects that he informed me that the verdict was unanimous at trial. Given the number of jury notes that were sent out during deliberations, it is very likely that he would be listening to the polling of his fellow jurors. Juror 6's testimony was also credible. Both lawyers, Ms. Darrough and Ms. Lomax, testified credibly. They both testified they did not hear any juror say "no" during the poll. Ms. Lomax testified that she heard a "no" only after hearing the audio recording on the morning of the evidentiary hearing.

I did not find Ms. Dispenzieri's explanation for the aforementioned errors in the transcript – Juror 7's answer and my exchange with Juror 12 – credible. She could not explain why the errors appeared in the transcript or whether she had reviewed the transcript after receiving it from her scopist before certifying and filing it. She also could not explain why her steno notes did not contain the answers provided by Jurors 7 and 8. I am not confident in her transcribing abilities, either during proceedings or when preparing certified transcripts after proceedings.[7] For these reasons, I give little weight to her testimony that she heard Juror 6 respond "no" during the poll during Defendant's trial. I do, however, credit her testimony that she hears a "no" when listening to the audio recording.

The failure of any attorney to object to a juror answering "no" when polled strongly suggests that all jurors answered "yes." *See United States v. Zichettello*, 208 F.3d 72, 96 (2d Cir. 2000) (finding evidence that "there were at least nine lawyers – three prosecutors and six defense attorneys

---

[7] The transcript is incorrect in several other places, which neither party highlighted. I have reviewed only three pages of the transcript from Defendant's trial and found multiple errors by comparing the transcript with the audio recording. The additional errors are identified in the Conclusion.

14

– present when the charge was read, but none objected to it" was strong evidence that the district court had not given the statement in question). Had a juror answered "no," there would likely have been a vocal reaction by at least one person in the courtroom – either one of the Government's two lawyers, one of Defendant's two lawyers, the courtroom deputy, other court personnel, or Defendant – that would have been captured in the audio recording.[8] However, the audio does not contain any audible reaction to Juror 6's response to the jury poll.

My instruction to Juror 12 confirms that I observed the answers provided during the jury poll. If I had observed a negative response during the polling of the jury, I would have stopped the poll, asked the jury to return to the jury room, and conferred with the Parties. Neither the transcript nor audio indicates that I stopped the poll. I remember that all jurors were polled and that I observed an affirmative response from each juror. The fact that the record reflects that I dismissed the jury after polling and scheduled sentencing also demonstrates that I found that each juror had answered the poll in the affirmative and that the jury's verdict was unanimous. *See United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (finding unanimous verdict where trial judge ordered verdicts to be filed and adjudicated defendant guilty even though one juror's response to poll was inaudible on court reporter's audio recording). All testimony presented at the hearing, with the exception of Ms. Dispenzieri, is consistent with my recollection of the jury polling.

Additionally, after the jury was dismissed, as is my usual practice, I briefly spoke with the jurors in the jury room to thank them for their service. None of the jurors expressed any concern about

---

[8] *See Cabberiza v. Moore*, 217 F.3d 1329, 1336 (11th Cir. 2000) ("We cannot imagine that, having just asked for a poll, the attorneys (or the court) would have remained mute if the clerk had forgotten to call one of the juror's names. Everyone in the courtroom would have noticed it-there were only six jurors sitting in the box. The only plausible conclusion is that the clerk did call all six jurors' names, and the reporter, in haste to get down all of the jurors' names, simply missed one.").

15

any juror's response during the jury poll.

Post-trial activity also strongly suggests that all jurors answered "yes." Defendant, through Ms. Lomax, filed a motion for new trial 14 days after the jury verdict. (DE 34, filed August 24, 2016). Defendant did not argue that any juror answered "no" during polling.[9] No one raised this issue at sentencing either. The most plausible explanation is because all jurors answered affirmatively when asked whether the verdict read by the foreperson was their verdict.

I recognize that the audio recording of Juror 6's answer is unclear. However, in light of the evidence, Juror 6's answer in the courtroom during the jury poll was a "yes." The transcript correctly reflects Juror's 6 answer was "yes."

## CONCLUSION

Based on reasons stated above and the evidence presented at the evidentiary hearing, the Parties' have provided clear evidence that the transcript contains errors. Accordingly, it is

**ORDERED AND ADJUDGED** that the Government's Motion to Clarify the Accuracy of the Trial Record Pursuant to Federal Rules of Appellate Procedure 10(e) (DE 63) is **GRANTED**. Defendant's Cross-Motion for Correction of the Record Pursuant to Fed. R. App. P. 10(e). (DE 80) is **GRANTED IN PART AND DENIED IN PART**. The transcript is corrected as follows:

(1) On Page 19 of the trial transcript for Day Three (DE 60 at 19:20), "And" should be inserted before "Has the jury reached a verdict?"

(2) On Page 20 of the trial transcript for Day Three (DE 60 at 20:2), "jury number" should be

---

[9] Defendant did argue, in connection with his argument about the coercive nature of giving a modified *Allen* charge in this case, that one juror was visibly crying when the verdict was read and when the jury was polled. (DE 34 at 4). However, he never argued that a juror answered negatively when polled.

corrected to "juror number" and "juror 1, 2, 3, etc.," should be inserted between "number," and "is this your verdict." The corrected sentence should read as follows: "When she finishes she will ask each of you in turn by juror number, juror 1, 2, 3, etc., is this your verdict."

(3) On Page 21 of the trial transcript for Day Three (DE 60 at 21:4), Juror 7's response should be corrected to "Yes."

(4) On Page 21 of the trial transcript for Day Three (DE 60 at 21), the following must be inserted between lines 18 and 19:

> **Juror:** [inaudible]
>
> **The Court:** Ma'am you need to answer out loud.

(5) On Page 21 of the trial transcript for Day Three (DE 60 at 21), the following must be inserted before line 20:

> **The Court:** Alright. Thank you.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this _24_ day of August, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record